UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| AYESHA KHAN,<br><br>    Plaintiff,<br><br>    v.<br><br>MIDWESTERN UNIVERSITY,<br>an Illinois corporation,<br><br>    Defendant. | Case No. 1:14-cv-9539<br><br>Judge John Robert Blakey |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Ayesha Khan ("Plaintiff" or "Khan") is a former medical student at Defendant Midwestern University ("Defendant" or the "University"). Plaintiff alleges that during the 2012-13 school year, she became clinically depressed and developed a generalized anxiety disorder due to a pregnancy and other extenuating circumstances in her life. Plaintiff further alleges that she requested reasonable accommodations in light of these disabilities, but Defendant denied her requests. Plaintiff's sole remaining claim pursuant to these allegations arises under the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq*. Defendant has moved for summary judgment, [58] at 1, and for the reasons explained below, Defendant's motion is granted.

## I. Background[1]

### A. University Policy

When a student fails a course at the University, their academic progress is reviewed by the University's Preclinical Promotions Committee ("PCP"). [57] at 3. As a matter of University policy, each course failure results in an accumulation of "failure-equivalents." *Id.* If a student accumulates one failure-equivalent, the PCP requires the student to repeat that course before they can progress in their studies. *Id.* If a student accumulates three failure-equivalents in a single academic year or four failure-equivalents spanning more than one year, the PCP generally dismisses the student. *Id.* Plaintiff does not dispute this characterization of University policy and practice. [59-1] at 4.

### B. Plaintiff's Time At The University

In the fall of 2010, Plaintiff matriculated into the University and enrolled in "Block I," which contains sixteen courses. [57] at 4. Plaintiff failed three of her initial sixteen courses, giving her four failure-equivalents (due to the variable credit values of the courses). *Id.* Plaintiff additionally withdrew from five other courses, one of which she was failing at the time of her withdrawal. *Id.* at 5.

On March 11, 2011, Plaintiff explained to the University's review board that she believed her academic difficulties were caused by her husband's illness. *Id.* Though Plaintiff had already accrued more than enough failure-equivalents to

---

[1] The facts are taken from the parties' Local Rule 56.1 statements. [57] refers to Defendant's statement of facts. [59-1] contains Plaintiff's responses to Defendant's statement of facts, and Plaintiff's statement of additional material facts. [61] refers to Defendant's replies to Plaintiff's statement of additional material facts.

justify her dismissal under University policy by this time, she was only suspended and placed on academic probation. *Id.*

In the fall of 2011, Plaintiff repeated the Block I courses she either failed or did not complete. *Id.* The PCP reviewed her work and allowed her to progress to "Block II," which contains twelve courses. *Id.* at 5-6.

Plaintiff became pregnant in late January or early February of 2013, during the pendency of Block II. [59-1] at 30. Plaintiff alleges that her pregnancy, in conjunction with multiple other factors, caused her depression and anxiety "in late January/early February" of 2013. *Id.* Plaintiff asked for, and was granted, a two-week medical leave of absence from February 25, 2013 until March 11, 2013. [57] at 7. Plaintiff's leave request was supported by a note from Dr. Gerald Farby. *Id.*

Plaintiff claims that when she returned to the University, she "asked for the following accommodations . . . rescheduling of exams in Pharmacology, Pathology, and Microbiology . . . [and assignment of a] Tutor for pharmacology [sic]." [59-2] at 2. Plaintiff's accommodation requests were supported by letters from Dr. Farby (dated March 20, 2013) and Plaintiff's "counselor," Sufi Ifthekhar Ahmed (dated March 18, 2013). [57-1] at 61-62. Plaintiff claims that she hand-delivered these letters to unnamed "school administrators" on March 21, 2013. [59-1] at 17.

The parties agree that Plaintiff's Pathology and Microbiology exams were rescheduled. [59-2] at 2. The parties further agree that Plaintiff was assigned a Pharmacology tutor, though Plaintiff claims the assigned tutor was unavailable to meet with her. *Id.*

3

Plaintiff had particular issues in her Pharmacology course, taught by Dr. Walter Prozialeck. Pharmacology spanned all three quarters of Block II, and was worth ten credits. [57] at 7. On March 25, 2013, Dr. Prozialeck sent an email to Ms. Khan regarding her academic standing in the course. *Id.* Plaintiff acknowledges that by this time, she had failed seven out of nine exams and was failing the course. [59-1] at 17. Dr. Prozialeck requested that Ms. Khan speak to him about her academic performance. *Id.*

On March 28, 2013, Ms. Khan came to Dr. Prozialeck's office. *Id.* The parties disagree regarding what was said during that meeting. Defendant suggests that Dr. Prozialeck spent time discussing Ms. Khan's overall course performance and calculated target grades that she would need to score on future exams in order to pass the course. [57] at 7. Defendant also claims that Dr. Prozialeck discussed general study strategies with her, and reviewed past exams. *Id.* Conversely, Plaintiff insists that the meeting largely consisted of her being "criticized for being pregnant. She was told there was no scope [sic] for her to pass the course as being pregnant is a fulltime job and required her to stay at home to play mommy." [59-1] at 10.

On April 14, 2013, Plaintiff emailed Dr. Prozialeck to explain that she was sick and unable to take the Pharmacology exam scheduled for the next day. *Id.* Plaintiff ultimately did not take the exam as originally scheduled. *Id.* From April 15, 2013, through April 17, 2013, Dr. Prozialeck and Plaintiff corresponded regarding the date of her make-up exam. *Id.* Dr. Prozialeck reset the exam for May

4

13, 2013, while Plaintiff hoped to take the exam earlier. *Id.* Eventually, Plaintiff took the exam as rescheduled by Dr. Prozialeck. *Id.* On the date of the exam, Plaintiff was thirty minutes late. *Id.* at 11. She failed the exam with a score of 58%, which Plaintiff acknowledges was consistent with her performance on the majority of exams throughout the course. *Id.* at 12.

On May 17, 2013, Dr. Rita Getz, Associate Dean of Academic Affairs at the University, informed Plaintiff that she had failed Topics in Medicine, Osteopathic Manipulative Medicine, and Pharmacology. [57] at 10. These failures, representing nine new failure-equivalents, brought Plaintiff to an accumulated total of thirteen failure-equivalents. *Id.*

On May 22, 2013, the PCP met to review Plaintiff's academic failures and listen to her explanations as to why she was not meeting the University's academic standards. *Id.* On May 23, 2013, Dr. Getz notified Ms. Khan of the PCP's decision to dismiss her from the University. *Id.* Plaintiff appealed the PCP's decision, first to the Dean of her college, Dr. Karen Nichols, and then to the University's president, Dr. Katherine Goeppinger. *Id.* at 16-19. Plaintiff initiated her appeal to Dr. Goeppinger before Dr. Nichols could issue a formal ruling. *Id.* at 18. Dr. Goeppinger ultimately affirmed the decision of the PCP based on Plaintiff's "history of course failures." *Id.* at 22.

## II. Legal Standard

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

5

matter of law. *Spurling v. C & M Fine Pack, Inc.,* 739 F.3d 1055, 1060 (7th Cir. 2014). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). In determining whether a genuine issue of material fact exists, this Court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *See CTL ex rel. Trebatoski v. Ashland Sch. Dist.,* 743 F.3d 524, 528 (7th Cir. 2014).

III. Analysis

    A. **Cognizable Evidence On Summary Judgment**

As a preliminary matter, the Court must address which material it will consider when evaluating Defendant's motion. Plaintiff first suggests that this Court should ignore Defendant's affidavits, because they are either not properly notarized or not signed. [59] at 2 (citing *DeBruyne v. Equitable Life Assurance Soc. of the U.S.*, 920 F.2d 457 (7th Cir. 1990). Plaintiff's position relies upon an outdated version of Federal Rule of Civil Procedure 56, and is accordingly rejected. Federal Rule of Civil Procedure 56(c)(4) "no longer requires a formal affidavit to be submitted, but instead allows a declaration to be used to oppose a motion for summary judgment, so long as it is 'made on personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the affiant or declarant is competent to testify on the matters stated.'" *Jajeh v. Cty. of Cook*, 678 F.3d 560, 568

6

(7th Cir. 2012) (quoting Fed. R. Civ. P. 56). Defendant's affidavits meet this standard, and the Court will rely upon them when considering Defendant's motion for summary judgment.

Conversely, both of Plaintiff's responses to Defendant's statement of material facts, and Plaintiff's statement of additional material facts, contain assertions that are inconsistent with the record. For example, Defendant's statement of material facts contains this assertion:

> Of the 16 courses Ms. Khan took in Block 1, she failed three: ANAT 1511-Histology, ANAT 1550-Gross Anatomy/Embryology, and PHYS 1501-Physiology, giving her four failure-equivalents - one each for ANAT 1511-Histology and PHYS 1501-Physiology and two for ANAT 1550-Gross Anatomy/Embryology. She withdrew from five courses: ANAT 1521- Neuroscience, FMED 1550-Intro to Clinical Medicine, OMED 1550-0steopathic Manipulative Medicine (Year 1 Lecture), OMED 1551-Osteopathic Manipulative Medicine (Year 1 Workshop), PSYC 1503-Psychiatry; and also withdrew from PHYS 1502-Physiology with a failing grade.

[57] at 4-5. Defendant's statement is borne out by citations to Plaintiff's deposition and the affidavit of Dr. Getz. *Id.* Plaintiff's response to this statement, however, provides, in part, that she "was never allowed to start these 3 courses [Neuroscience, Psychiatry and Physiology] and denies the statement that she withdrew from PHYS 1502-Physiology with a failing grade because AYESHA KHAN never took this course. Therefore, AYESHA KHAN cannot fail a course she never took." [59-1] at 6. Plaintiff cites her affidavit as alleged support of this denial, but her affidavit fails to contain any statement that could possibly be construed to support this assertion. *See generally* [59-2]. The Court will not belabor

7

this point by enumerating each instance in which Plaintiff has failed to satisfy the requirements of both Federal Rule of Civil Procedure 56 and Local Rule 56.1 ("Each party opposing a motion filed pursuant to Fed. R. Civ. P. 56 shall serve and file . . . a concise response to the movant's statement that shall contain . . . a response to each numbered paragraph in the moving party's statement, *including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon.*") (emphasis added). Suffice it to say, that the Court will not consider any of Plaintiff's unsupported assertions that fail to cite properly the relevant portions of the record.

### B.  Plaintiff Is Not "Otherwise Qualified"

At this point in the proceedings, Plaintiff's sole claim is brought pursuant to Section 504 of the Rehabilitation Act, which protects a "qualified individual" from discrimination "solely by reason of" her disability, in any program receiving federal assistance. 29 U.S.C. § 794(a). Plaintiff appears to be pursuing two different theories of recovery under the Rehabilitation Act: traditional discrimination and a "failure to accommodate."

To survive summary judgment under either theory, Plaintiff must adduce competent evidence from which a reasonable factfinder could determine that she was a "qualified individual" within the meaning of the statute. *Phipps v. Sheriff of Cook Cty.*, 681 F. Supp. 2d 899, 911 (N.D. Ill. 2009) (In order to proceed on a discrimination claim under the Rehabilitation Act, Plaintiff must show: "(1) that he is a handicapped individual under the Act; (2) that he is otherwise qualified for the

benefit sought; (3) that he was discriminated against solely by reason of his handicap; and (4) that the program or activity in question receives federal financial assistance.") (internal quotations omitted); *Rouse v. Chicago Transit Auth.*, No. 13-cv-5260, 2016 WL 5233591, at *3 (N.D. Ill. Sept. 21, 2016) ("A plaintiff alleging a failure to accommodate under the Rehabilitation Act" must establish that "(1) he is a qualified individual with a disability; (2) the employer was aware of his disability; and (3) the employer failed to reasonably accommodate the disability.") (internal quotation omitted).[2]

In the context of "postsecondary and vocational education services," a disabled person is "otherwise qualified" if she "meets the academic and technical standards requisite to . . . participation in the [school's] education program or activity." 45 C.F.R. § 84.3(l)(3); *see also Knapp v. Nw. Univ.*, 101 F.3d 473, 482 (7th Cir. 1996) ("An otherwise qualified person is one who is able to meet all of a program's requirements in spite of his handicap . . . with reasonable accommodation."); *Watson v. St. Luke Acad.*, No. 04-cv-2472, 2005 WL 281227, at *3 (N.D. Ill. Feb. 2, 2005) ("Here, 'otherwise qualified' would mean that had [plaintiff's son] not had the disability, he would have qualified on all other admission requirements to the Academy and that he was denied only because of his disability.

---

[2] For the purposes of its present motion, Defendant assumes that Plaintiff is disabled. [58] at 8. Defendant further acknowledges that it receives federal funds and that Plaintiff was dismissed from the University. *Id.* Accordingly, Defendant's only contentions on summary judgment are that: (1) Plaintiff was not "otherwise qualified" to continue at the University; and (2) Plaintiff was not dismissed from the University "solely" based on her disability. *Id.* at 9. As discussed *infra*, the Court agrees that Plaintiff was not "otherwise qualified," and accordingly does not reach Defendant's second argument.

9

[Plaintiff's son] is not 'otherwise qualified' because, absent his alleged handicap, he still would not have met the requirements to attend the Academy.").

Generally, federal courts do not second-guess the judgment of academic administrators regarding the qualifications of their students. For that reason, courts across the country "have overwhelmingly extended some level of deference to schools' professional judgments regarding students' qualifications when addressing disability discrimination claims." *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 463 (4th Cir. 2012) (collecting cases). The Seventh Circuit, for its part, has repeatedly warned against the "the significant costs associated with heavy-handed judicial intrusion into internal academic decisions." *Novak v. Bd. of Trustees of S. Illinois Univ.*, 777 F.3d 966, 976 (7th Cir. 2015) (internal quotation omitted). While academic institutions "are in no way exempt from our discrimination laws," courts must be careful "when assessing the evidence in such cases," in light of "the nature and mission of the institutions" and the simple fact that "academic judgments often rest on necessarily subjective judgments about academic potential." *Id.* at 796-97 (internal quotation omitted).

*Anderson v. University of Wisconsin* is instructive on this point. 841 F.2d 737, 741 (7th Cir. 1988) (affirming grant of summary judgment on plaintiff's Rehabilitation Act claim after observing that the "Supreme Court has repeatedly admonished courts to respect the academic judgment of university faculties"). The plaintiff in *Anderson* was a former law student at the University of Wisconsin who struggled with alcoholism. *Id.* at 739. He alleged that the university and its

10

officials discriminated against him on basis of his alcoholism by denying his request for readmission to the law school. *Id*. The district court originally granted defendants' motion for summary judgment, after determining that plaintiff was not "qualified" to "continue as a law student." *Id*. at 740. The Seventh Circuit affirmed on an alternative basis, but its discussion of the "qualified" standard is illuminating:

> Although inability to perform at the required standard as a result of a handicap makes a person not 'otherwise qualified,' a court still must decide what that standard is. The meaning of a standard lies in the method of its application. A student who cannot maintain [the requisite average] at the Law School is not qualified to remain as a student, *unless* the student shows that the source of the academic problem has been abated, making future work of satisfactory quality likely.

*Id.*

The "meaning of" the "qualified" standard in this case, as derived from "the method of its application," *id.,* lies within the University's policies and procedures. It is undisputed that under those same policies, if a student accumulates three failure-equivalents in a single academic year or four failure-equivalents spanning more than one year, the University "generally dismisses" the student. [57] at 3.

Plaintiff's four accumulated failure-equivalents in the 2010-2011 academic year rendered her eligible for dismissal long before she ostensibly became disabled or requested any accommodations as alleged. *See supra* at 2. As Plaintiff admits, these failures alone "generally" lead to dismissal. [59-1] at 4.

The University, in its "professional judgment," *Halpern*, 669 F.3d at 462, nevertheless allowed Plaintiff to continue to Block II on probation. [57] at 5.

11

Approximately eighteen months later, Plaintiff "asked for the following accommodations . . . rescheduling of exams in Pharmacology, Pathology, and Microbiology . . . [and assignment of a] Tutor for pharmacology [sic]." [59-2] at 2. Plaintiff admits that her Pathology and Microbiology exams were, in fact, rescheduled, and that she was assigned a Pharmacology tutor (though she contends the tutor was never available). *Id.*

In short, Plaintiff received the vast majority of the specific accommodations she requested; and while she did not receive the accommodations she requested in Pharmacology, Plaintiff acknowledges that by the time she made those same requests, she had already failed seven out of nine exams and was failing the course. [59-1] at 17. More fundamentally, she failed two *other* courses in Block II besides Pharmacology, and she made no specific accommodation requests in those courses. *See supra* at 3. Independent of any potential accommodations issues, these two additional failures, on top of her initial course failures in Block I, brought her well above the established threshold for dismissal.

In the end, no reasonable factfinder could determine, on this record, that Plaintiff was "otherwise qualified" to continue at the University (with or without the requested accommodations), because absent her alleged handicap issues, she "still would not have met the requirements" to remain enrolled. *Watson v. St. Luke Acad.*, No. 04 C 2472, 2005 WL 281227, at *3 (N.D. Ill. Feb. 2, 2005).

## IV. Conclusion

For the foregoing reasons, Defendant's motion for summary judgment [5] is granted. Civil case terminated.

Dated: December 12, 2016

                                        Entered:

                                        John Robert Blakey
                                        United States District Judge